CAROBERTO COLÓN ROSICH, demadante y apelado, *v.* RAFAEL SAURÍ, demandado y apelante.

No. 4975.—*Sometido:* Abril 25, 1930. *Resuelto:* Julio 28, 1931.

*Tous Soto & Zapater,* abogados del apelante; *F. Colón Díaz,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

El demandante y apelado hizo un contrato verbal con

Oscar Oppenheimer. que expiraría en 1928. El contrato se celebró en 1923 para el corte y tiro de caña. Asumamos con el apelante que la palabra "tiro" de caña significa la transportación de caña. El corte habría de tener lugar en la hacienda Santa Cruz. En octubre de 1924 Oppenheimer vendió esta propiedad a Rafael Saurí, demandado y apelante. El demandante alegó que Rafael Saurí convino verbalmente en continuar el· contrato celebrado entre el demandante y Oscar Oppenheimer. El demandante entabló pleito por el quebrantamiento del contrato y por daños y perjuicios.

Al terminar el demandante de practicar su prueba, el demandado presentó una moción ‚de *nonsuit,* que la corte desestimó, y fundamentó otra vez al dictar sentencia a favor del demandante. Se señalan dos errores a este respecto. El primero es que el contrato era uno mercantil y debió haber sido probado por documento. El segundo es que la corte erró al considerar únicamente evidencia oral como probatoria de un contrato que es costumbre hacerlo por escrito. Las disposiciones aplicables del Código de Comercio son:

"Art. 349.—El contrato de transporte por vías terrestres o fluviales de todo género, se reputará mercantil:

"1. Cuando tenga por objeto mercaderías o cualesquiera efectos del comercio.

"2. Cuando, siendo cualquiera su objeto, sea comerciante el porteador o se dedique habitualmente a verificar transportes para el público.

"Art. 51.—Serán válidos y producirán obligación y acción en juicio los contratos mercantiles, cualesquiera que sean la forma y el idioma en que se celebren, la clase a que correspondan y la cantidad que tengan por objeto, con tal que conste su existencia por alguno de los medios que el derecho civil tenga establecidos. Sin embargo, la declaración de testigos no será por sí sola bastante para probar la existencia de un contrato, cuya cuantía exceda de 1,500 pesetas, a no concurrir con alguna otra prueba.

"La correspondencia telegráfica, sólo producirá obligación entre los contratantes que hayan admitido este medio previamente y en contrato escrito y siempre que los telegramas reúnan las condiciones

o signos convencionales que previamente hayan establecido los contratantes, si así lo hubiesen pactado.''

■ La prueba tendió a demostrar que era la profesión del demandante hacer contratos de corte y tiro con otras personas, además de Oppenheimer, y que ésta era la ocupación general y costumbre del demandante. La corte resolvió, en efecto, que para que pudiera caer dentro de las disposiciones del artículo 349, el contrato de tiro debía hacerse independientemente de otros contratos y que debía ser público, y estamos conformes. La corte cita varias autoridades tendentes a sostener sus puntos de vista. Tal vez, según arguye el apelante, hay algún conflicto en las autoridades respecto a si un contrato que envuelve transportación no debe ser siempre considerado mercantil. Tenemos la idea, y así lo resolvemos, que la operación del demandante envuelta en este caso no fué pública dentro del sentido del artículo 349. El no negociaba con todos los que se le presentaran sino que hacía aquellos contratos que le convinieran. El público a que se refiere el artículo 349 tiene distinta connotación, y significa porteadores públicos generalmente reconocidos como tales. Una persona que nada hizo salvo transportar caña a solicitud de prácticamente cualquiera, podría considerarse como un porteador público.

■ Una consideración más importante es que el demandante se dedicaba a cortar y transportar caña, ocupación esencialmente agrícola, y no una de transportación independientemente. Nos inclinamos a resolver que cuando un contrato es tanto civil como mercantil, su naturaleza civil prevalece. En otras palabras, para invocar el artículo 51, el carácter mercantil debe ser incuestionable.

■ El corte de caña puede fácilmente envolver alguna pericia. El aquí demandante se comprometió a convertir la caña en pie en mercancía transportable, y luego a llevarla. ¿Se comprometería cualquier porteador público a hacer lo mismo como una profesión? Ya sea o no técnicamente

perfecto nuestro razonamiento, creemos que una persona corriente se convencería de que el contrato ante nos no es mercantil.

■ La corte encontró una clara preponderancia de la prueba en favor del demandante y se señala esto como error. A pesar de toda la argumentación, en el análisis final sólo hubo un conflicto en la prueba y la corte dió crédito a los testigos del demandante. En octubre de 1924, cuando se hizo el traspaso, el demandante, el demandado, Oppenheimer y otras personas se reunieron en la residencia del demandante para redactar la escritura de traspaso entre Oppenheimer y Saurí. Un notario estaba, desde luego, presente. Declararon el demandante, Oppenheimer y otros, que Oppenheimer proponía que el convenio entre él y el demandante se hiciera constar por escrito. Entonces, de acuerdo con la prueba testifical, Saurí alegó que era innecesario un documento porque él cumpliría el contrato, o palabras a ese efecto. Por otra parte, el notario declaró que él estuvo presente durante todos los procedimientos y que no tuvo lugar tal conversación o convenio. Naturalmente la corte quedó impresionada por esta negativa y practicó una inspección ocular del sitio. Los testigos habían declarado que el convenio de que se trata se celebró en el comedor mientras el notario estaba sentado en la sala. El juez se colocó donde había estado el notario y encontró en efecto que si bien una persona podría darse cuenta de que se hablaba en el comedor, sin embargo, no podría coger el sentido. La corte estuvo dispuesta a no dudar de la credibilidad del notario, sino que simplemente creyó que estaba equivocado. Por nuestra parte no vemos cómo cualquier notario, ya esté o no continuamente ocupado en la preparación de una escritura, podría estar seguro de haber oído toda la conversación. Importa poco que la corte llegara a la conclusión, a virtud de la prueba, de que hubiera o no mucho alboroto en el local. La corte comentó

la diferencia de franqueza entre los testigos del demandante y la de algunos de los testigos del demandado, fuera del notario. No hallamos motivo alguno para desviarnos del hábil y laborioso análisis hecho por la corte inferior.

Volviendo ahora al artículo 51 del Código de Comercio, tenemos la idea de que en este caso concurrió alguna otra prueba que no fuera oral. La existencia del contrato anterior entre Oppenheimer y el demandante era una; el hecho de que el notario y las partes trataran en la escritura de cubrir o anticipar todos los gravámenes o cargas, era otra; y aun otra lo era el que la venta se hiciera en la residencia del demandante, que por otra parte no tenía otro interés que el de ser un amigo de las partes. Todo esto fué prueba circunstancial, a más del mero testimonio oral de testigos.

No encontramos prueba satisfactoria de que sea costumbre celebrar por escrito contratos de esta clase. Aunque la hubiera, nada encontramos en la ley que obligue a los contratantes a seguir esa costumbre.

El demandante solicitó indemnización por daños y perjuicios porque no tuvo la oportunidad de cortar y transportar la caña de la finca durante los años 1925 y 1926, y reclamó $3,210.90 La corte limitó esa reclamación a la cantidad de $1,500, y el apelante no nos convence de que se cometiera error; de igual modo en cuanto a las costas.

*Debe confirmarse la sentencia apelada.*